1              UNITED STATES DISTRICT COURT

2                 DISTRICT OF MINNESOTA

3   ------------------------------------------------------------

4   Richard Wentzel, et al.,          Civil No.:  11-cv-1236
                                      (MJD/LIB)
5              Plaintiffs,

6   v.

7   Citimortgage, Inc.,
    a corporation,

8
               Defendant.

9   ------------------------------------------------------------

10

11

12

13

14

15

16

17

18          Transcript of Motion to Dismiss
              Friday, September 23, 2011
19             United States Courthouse
                 Duluth, Minnesota
20

21

22

23          Court Reporter:  Susan A. Seliga

24

25

1          The proceedings were held in the above-entitled matter

2     before the Honorable Michael J. Davis, Chief Judge, U.S.

3     District Court, at the United States Courthouse, Duluth,

4     Minnesota, on Friday, September 23, 2011, commencing at

5     approximately 8:00 a.m.

6

7

8     APPEARANCES:

9     Mr. Stephen F. Rufer
      Attorney at Law
10    PEMBERTON, SORLIE, RUFER,
          KERSHNER, PLLP
11    110 North Mill Street
      P.O. Box 866
12    Fergus Falls, MN 56538
            On behalf of the Plaintiffs
13
      Mr. Kendall Bader
14    Attorney at Law
      BARNES & THORNBURG, LLP
15    225 South Sixth Street
      Suite 2800
16    Minneapolis, MN 55402-4662
            On behalf of the Defendant
17
      ALSO PRESENT:
18
            Mr. Richard Wentzel, Plaintiff
19
            Ms. Debra Wentzel, Plaintiff
20
            Ms. Kristine Wegner, Courtroom Deputy
21

22

23

24

25

1                      <u>**I N D E X**</u>

2                                                        <u>Pages</u>

3    Argument by Mr. Bader................................    4

4    Argument by Mr. Rufer...............................   13

5    Argument by Mr. Bader...............................   20

6

7

8

9

10

11

12                      <u>**E X H I B I T S--None**</u>

13

14

15

16

17

18

19

20

21

22

     OBJECTIONS--None.
23

24   NOTE:  Original transcript to be filed with the U.S.
     District Court, Minneapolis, Minnesota.
25

```
 1                        (September 23, 2011)

 2              (Convened at 7:57 a.m.)

 3                   THE COURT:  Let's call this matter.

 4                   MS. WEGNER:  Richard Wentzel, et al., versus

 5              Citimortgage, Incorporated.  Civil Case Number

 6              11-cv-1236.  Counsel, please state your appearances

 7              for the record.

 8                   MR. RUFER:  For the Plaintiff, Steven Rufer.

 9              And with me are the Plaintiffs personally present,

10              Debra and Richard Wentzel.

11                   THE COURT:  Good morning.

12                   MR. WENTZEL:  Good morning, Your Honor.

13                   MR. BADER:  For the Defendant, CitiMortgage,

14              Kendall Bader, B-A-D-E-R.  Good morning, Your Honor.

15                   THE COURT:  Good morning.  You may proceed

16              with your argument.

17                   MR. BADER:  Thank you, Your Honor.

18                   Morning, Your Honor.  The case before us is

19              a relatively simple and straightforward matter.

20              Despite the fact that the Complaint contains numerous

21              factual allegations and a number of different legal

22              claims, there are really three, only three, material

23              facts, and they're all undisputed.

24                   The first is that the purported modification

25              agreement between CitiMortgage and the Plaintiffs, by
```

1   Plaintiffs' own admission, was never reduced to

2   writing.  The second material fact is that this

3   modification agreement also resulted undisputedly from

4   a one-on-one transaction between the Plaintiffs and

5   Citimortgage.  The final undisputed fact is that for

6   five years Citimortgage -- or Plaintiffs have paid

7   their mortgage directly to Citimortgage without

8   question or comment.

9          In the interest of brevity, in his

10  responsive memorandum, the Plaintiff -- Plaintiffs

11  never contested that Minnesota Statute 513.33, which

12  requires a modification agreement such as the one at

13  issue in this case to be in writing, operates as a bar

14  to unwritten credit agreement -- to enforcement of

15  unwritten credit agreements.  Plaintiff has not

16  contested that that statute bars their breach of

17  contract, common law fraud and misrepresentation

18  claims.  So unless Plaintiff makes an argument that it

19  does, at this time I won't as well, unless the Court

20  feels it's necessary.

21          Moving on to their promissory estoppel

22  claim, Plaintiffs have argued that Section 513.33 does

23  not bar a promissory estoppel claim.  This is counter

24  to the Minnesota Court of Appeals' ruling.  Section

25  four -- 513.33 has a very broad scope.  The language

1      says that it bars any action on an unwritten credit

2      agreement, which we have in this case, and action

3      means -- presumably, it means a cause of action.

4               The Minnesota Court of Appeals in the

5      case of *Greuling v. Wells Fargo Home Mortgage*,

6      conclusively held that 513.33 bars promissory estoppel

7      claims and misrepresentation claims.  The Court of

8      Appeals in Minnesota has, as recently as April 2011,

9      reaffirmed its holding as we discuss in our reply

10     memorandum.

11             Further, the Plaintiff in their responsive

12     memoranda admits that 513.33 stands for the

13     proposition that there -- that promissory estoppel

14     claims are barred by that statute, but points out --

15           THE COURT:  Well, aren't you a little bit

16     early in bringing that motion?  Shouldn't it have been

17     at summary judgment time, because both *Myrlie* and

18     *Greuling* are summary judgment cases that where facts

19     are fully developed and so the Court can make the

20     determination?

21           MR. BADER:  Well, I agree that --

22           THE COURT:  It seems like it's the new

23     practice of the bar, is the rushing the Court on a

24     12(b)(6) motion, to have the Court dismiss cases out

25     without having any legitimate discovery or facts

1          before it to make a learned decision.

2                    MR. BADER:   I understand the Court's concern

3          about that.  But it seems to me that the question of

4          whether or not 513.33 bars the promissory estoppel

5          claim is a matter -- is a question of law, not of

6          fact.  I do admit that the court in the other cases

7          had a more full, factual record from which to decide.

8          But at the same time, they clearly ruled in all cases

9          that 513.33 is a bar to a promissory estoppel claim.

10         They didn't base that decision based on the facts of

11         the case.  They based it on the statutory language and

12         the intent of the legislature when it passed, and

13         513.33 was passed to prevent creditors from having to

14         come in and litigate these claims of oral credit

15         agreements.

16                   So I recognize the concern, and but at the

17         same time, if the factual allegations -- the factual

18         record isn't going to change whether or not 513.33

19         bars a promissory estoppel claim.  And to the extent

20         that it doesn't, then arguably, as a matter of law,

21         the Plaintiffs haven't proved -- haven't alleged any

22         facts that would allow this Court to conclude that a

23         promissory estoppel claim is appropriate.

24                   Plaintiffs have alleged that essentially

25         since 2008, they've been making a reduced payment on

1          their mortgage.  It's hard to imagine why that is to

2          their detriment, as is required in a promissory

3          estoppel claim.  Under the terms of the original note

4          and mortgage, Citimortgage had the right to foreclose

5          its mortgage at anytime when Plaintiffs couldn't meet

6          their obligations under the note.  Rather than

7          foreclosing in August 2008, as would have been their

8          right, they -- they allowed the Plaintiffs to make a

9          reduced payment for a number of -- for more than a

10         year, as they worked towards trying to find a

11         modification agreement that would work.  They

12         couldn't.  And so at this point, they're sort of --

13         they had -- they had internally moved the matter to

14         foreclosure.  They have yet to foreclose on

15         Plaintiffs' property.  The Plaintiffs have been

16         staying in the property for -- since 2008, paying a

17         reduced mortgage.  It's hard to imagine that that is

18         to their detriment.

19                  And further, in another case in this

20         District -- and let me see if I can find the exact

21         language.  Oh, in *Myrlie*, or *Myrlie*, I'm not sure if

22         I'm pronouncing that correct, *v. Countrywide Bank*,

23         this Court said that, Further, there's no injustice in

24         not enforcing an alleged loan modification agreement.

25         And the Court reasoned that in an arm-length's

1    agreement, there's no injustice in denying a debtor's

2    request to modify a credit agreement to terms more

3    favorable to the debtor and less favorable to the

4    creditor; and further, that enforcing the oral

5    modification agreement would run contrary to 513.33,

6    which was enacted to protect lenders from having to

7    litigate claims of oral promises.

8         So even taking all the allegations of the

9    Complaint as absolutely true, without developing the

10   factual record any more, I think that this Court can

11   rule as a matter of law that one, 513.33 provides an

12   absolute bar to the promissory estoppel claim; and

13   two, that even if it didn't, the Plaintiffs have not

14   alleged facts sufficient to support a claim of

15   promissory estoppel.

16        Moving on to the Plaintiffs' consumer fraud

17   claim, first, I think, arguably, Section 513.33,

18   because of its broad language, bars a Consumer Fraud

19   Act claim.  Admittedly there's no statutory -- there's

20   no case law that demonstrates that, nor is there case

21   law that demonstrates that a Consumer Fraud Act claim

22   is allowed under 513.33.  But even to the extent that

23   a consumer fraud claim is not barred under 513.33, it

24   is -- Plaintiffs' ability to pursue that claim is

25   based on the Minnesota Supreme Court's holding in the

1   *Ly v. Nystrom* matter which required that any action

2   brought pursuant to the Private Attorney General

3   Statute confer a public benefit.  And that court also

4   held that, as a matter of law, that a transaction

5   involving -- or a one-on-one transaction, as a matter

6   of law, cannot provide public benefit.

7           And so I think it's undisputed that the

8   claim in this case -- or the agreement in this case

9   was the result of a one-on-one transaction between the

10  Plaintiffs and Citimortgage and, as a matter of law,

11  consequently, cannot provide a public benefit as

12  required by the Private Attorney General Statute.

13          Lastly, Plaintiffs have -- I shouldn't say

14  lastly.  Second to last, the Plaintiffs have claimed

15  that Citimortgage has been unjustly enriched by

16  accepting their mortgage payments for more than five

17  years.  Pursuant to the *Twombly* case, in order to

18  survive a motion to dismiss, a complaint must plead

19  facts with enough specificity to raise a right to

20  believe above the speculation level, and allegations

21  in a complaint must be plausible rather than merely

22  conceivable.

23          Plaintiffs have based their unjust

24  enrichment claim entirely on speculation.  They claim

25  that Citimortgage has been wrongfully collecting their

1    mortgage payments for more than five years with no

2    contractual right to do so.  With respect to a highly

3    sophisticated mortgage lender, that seems implausible,

4    highly implausible, and likely -- I mean, it is

5    arguably conceivable, but implausible.

6             The Plaintiffs also don't dispute that they

7    owe money under the note, only that Citimortgage is

8    wrongfully collecting the note.  And so even if that

9    were true, the Plaintiffs wouldn't be entitled to a

10   refund of this money necessarily because they're not

11   the ones who have been injured by Citimortgage's

12   conduct.  It's the purported owner of the note that is

13   not Citimortgage, but we don't know who it is.  But --

14            THE COURT:  So Citimortgage should keep the

15   money then.

16            MR. BADER:  No, no.  If this Court finds

17   that Citimortgage has been unjustly enriched, then I

18   would argue that the proper process or procedure would

19   be to deposit this money with the Court until the

20   Court can determine who the rightful party that is

21   entitled to this money is.  It's clearly not the

22   Plaintiffs because the Plaintiffs have a mortgage

23   payment.  And if the Plaintiffs were to receive the

24   money, then they themselves would be unjustly

25   enriched.

1          THE COURT:  I guess you've just ruled on

2     that motion, haven't you?

3          MR. BADER:  Depending on how the Court

4     feels, right, because ultimately --

5          THE COURT:  I think you're getting a feeling

6     of how the Court feels, aren't you?

7          MR. BADER:  But ultimately -- I understand

8     your point.  But ultimately, the Plaintiffs' conduct

9     with respect to Citimortgage demonstrates that they

10     don't actually believe that there's another

11     noteholder.  They have been paying, without question

12     or comment, their mortgage payment to Citimortgage

13     since 2006.  When they were unable to make their

14     mortgage payment, they contacted Citimortgage directly

15     asking them for help.  They have engaged in

16     negotiations with Citimortgage over the modification

17     of this promissory note for two years, more than two

18     years.  And the fact that they now say that

19     Citimortgage doesn't hold the note just seems to run

20     counter to their conduct.  I think that this is --

21     this unjust enrichment case is a sort of

22     show-me-the-note type action.  They're asking

23     Citimortgage to demonstrate that they hold the

24     promissory note.  But as this Court has and courts in

25     Minnesota and courts elsewhere have all routinely

1      held, Citimortgage does not have a right -- does not

2      have a duty to show the note to somebody who asks for

3      it merely because the other party is asserting that

4      Citimortgage doesn't hold the note.

5              So lastly, Your Honor, and I'm sorry if I've

6      run long, but Plaintiffs have not really in any way

7      been damaged by Citimortgage's conduct.  They must

8      have incurred some loss in order to have been damaged.

9              As we discussed previously, Plaintiffs were

10     required to make their mortgage payments under the

11     original note and mortgage.  Had they continued -- had

12     they not made those payments starting in August 2008,

13     Citimortgage would have already foreclosed on its

14     mortgage and Plaintiffs would be without their

15     property right now.  And the payments made by the

16     Plaintiffs under their note, and they were reduced

17     payments, no less, are not really losses because they

18     had a contractual obligation to make those payments.

19     And hence, they're not damaged.

20             So unless the Court has any questions, thank

21     you, Your Honor.

22             THE COURT:  Thank you.  Counsel?

23             MR. RUFER:  May it please the Court, counsel

24     has argued that there are three key facts to this

25     case.  In fact, there is a key fact that has been

1        alluded to, but was not specifically called to the

2        Court's attention.  And that is that Citibank does not

3        hold any rights to receive these payments.  This, of

4        course, is a Rule 12 motion.  And the Complaint

5        indicates that Citigroup has notified the Plaintiffs

6        in 2010, after having accepted payments for four

7        years, that they do not have an assignment of the

8        mortgage, and there's been no contrary allegation.

9        And, of course, if there were, it wouldn't affect a

10      Rule 12 motion.

11             We were unable to find any similar cases

12      where a purported lender has claimed a right to

13      collect payments and had no support, apparently, for

14      that supposed right.  All of the other cases dealing

15      with the issues here, the promissory estoppel cases,

16      *Myrlie, Greuling,* they all deal with lenders who held

17      the paper, had a -- had a mortgage or had an

18      assignment.  The Wentzels have never had a contract

19      with Citimortgage.  They had a contract with a company

20      called Harmonic Mortgage, which may or may not exist

21      anymore.  We don't know that.  And it's been nearly a

22      year now, I think that was in December of 2010, that

23      the Wentzels were notified that Citigroup could no

24      longer deal with them, and that they were, in effect,

25      stuck in limbo.  They couldn't negotiate an agreement

1    and they -- and they couldn't proceed with the

2    foreclosure that Citigroup has attempted to start

3    against them because Citigroup doesn't hold the paper.

4              So under those circumstances, to look first

5    at the unjust enrichment claim, certainly the Wentzels

6    owe someone on this note, but they expect to owe

7    someone who is in a position to negotiate with them,

8    if necessary, but certainly in a position to satisfy

9    their mortgage when it is ultimately paid off.  And at

10   the present time, that isn't Citimortgage.  And as far

11   as we know, it never was.  There's no contrary

12   allegation in the record to suggest that they held an

13   assignment and lost it or any such thing.

14             There are cases that -- there's a line of

15   cases, as counsel has indicated, the show-me-the-note

16   cases, and that is, as I understand it, a sort of a

17   claim that's been made in some foreclosure cases where

18   the homeowner or the debtor has alleged that unless

19   the original mortgage or note can be produced, there

20   can't be a valid foreclosure.  That's certainly not

21   the case here.  And in this -- in all of those cases,

22   the lenders had assignments, or had original

23   mortgages.  They were recorded.  They had copies of

24   them.  It's just that they didn't have the original.

25   We're certainly not making a frivolous claim of that

 1          sort here.

 2                    It's been suggested that our unjust

 3          enrichment claim is based on speculation.  And the

 4          reason for that is sort of a trust-us attitude of,

 5          surely a big company wouldn't take the position that

 6          they own the mortgage, but never did.  Obviously, they

 7          know something about our mortgage because they knew

 8          our name and address and they knew about the property.

 9          But with all of the mortgage shuffling that took place

10          in recent years, we have no idea whether it was also

11          on a list that was sold to Bank of America or Wells

12          Fargo or kept by Harmonic at the end of the day.  And

13          so the Wentzels are truly in an impossible position

14          here to try to make continued payments, which they

15          have attempted to do, and those payments have been

16          refused.  But they don't know whether Wells Fargo will

17          show up some day and say, oh, well, we're the ones

18          that have the assignment.  And it's -- it's easy for

19          counsel to suggest, well, Wells Fargo can just get the

20          money from Citi if and when that happens.  But in the

21          meantime, we are out the money.  And that would put

22          the Wentzels in a position of having to deal with two

23          bureaucratic institutions, and it would -- it would

24          not be a pleasant situation for them.

25                    Reviewing the claims in this case, on the

1    promissory estoppel claim, clearly we meet the

2    elements of promissory estoppel unless 513.33 stands

3    in the way.  The *Myrlie* case, Judge Boylan's opinion

4    in that case is very fact specific.  And he refers to

5    513.33 as well, but also finds that the plaintiff in

6    that case failed to meet the elements of promissory

7    estoppel.  And in *Myrlie,* as in every other single

8    case that we've been able to find, Countrywide owned

9    the mortgage.  They were the proper owner of the

10    mortgage.  In that case, the homeowner couldn't make

11    the payments.

12        In this case, the Wentzels made every

13    payment under their agreement to Citimortgage and have

14    continued to make them into escrow since.  And in

15    *Myrlie,* the plaintiff couldn't remember any of the

16    facts of the supposed modification.  Here the

17    modification is spelled out in exquisite detail down

18    to the interest rate and the payments and every

19    conceivable detail, and it was reaffirmed several

20    times.

21        As to the Consumer Fraud Act, applicability

22    to the act, the *Ly versus Nystrom* case, the Minnesota

23    case, was one that involved the sale of a restaurant.

24    It was clearly a one-on-one transaction between two

25    business people.  It was not like a vacuum cleaner

1    salesman going door-to-door and fraudulently

2    misrepresenting the vacuum cleaners.  In the -- in the

3    two federal cases that have dealt with the issue,

4    Judge Frank's opinion in the *Bartol* case and Judge

5    Montgomery's opinion in the *Peterson-Price* case, the

6    issue was, once again, a valid mortgage, an apparently

7    valid foreclosure, and an arguably nit-picking defect

8    in whether the Truth in Lending Act was complied with

9    properly or whether the defects in the change of --

10   chain of title --

11           THE COURT:  I have great respect for Judge

12   Frank and Judge Montgomery, but I have to make my own

13   decision.

14           MR. RUFER:  I understand that, --

15           THE COURT:  They're not --

16           MR. RUFER:  -- Your Honor.

17           THE COURT:  They're not my appellate court,

18   so...

19           MR. RUFER:  And I fully understand that.

20   And were it necessary to distinguish those cases, I

21   think they are very distinguishable.  I think if the

22   issue is, as the Minnesota court has said in the *Ly*

23   case, there has to be a public benefit and a public

24   interest.  There is a clear public benefit here, I

25   think, where we have a lender who is sort of

1    flip-flopping and taking the position, this is our

2    mortgage, we can modify it; no, it isn't our mortgage,

3    we can't modify it, but we are foreclosing; and no,

4    we're not foreclosing it.  That's a tremendous burden

5    to put the public through.  And we can't help but

6    believe that once we get into discovery in this case,

7    we'll discover that it is a practice that affected a

8    large number of people, more than just my clients in

9    this case.

10            Finally, Your Honor, as to -- as to the

11   fraud claim, in effect, the defense to our fraud claim

12   is sort of an allegation that we have waived it.  But

13   we've done no such thing.  In our -- in our brief at

14   page 10, we clearly point out to the Court that the

15   two acts of fraud here are the continued promise that

16   papers are in the mail, even though they weren't, and

17   the continued promise that Defendant was the owner of

18   Plaintiffs' mortgage and note, when after four years,

19   they said, oh, no, I guess maybe we're not.  And I

20   think those allow us to go together -- to go forward

21   on the issue of fraud.

22            As to damages, the claim is advanced that we

23   owe money to somebody anyway; so, therefore, we aren't

24   damaged.  But the problem in this case is that we

25   don't owe the money to Citi based on the Complaint.

1    And so we are damaged by the fact that they have our

2    money.  If and when the correct holder of the note, if

3    it is not Citi, steps forward, that money isn't in our

4    checking account.  It's in Citi's.  And we're going to

5    be the ones caught in the middle to have to straighten

6    that out.  So I think that's a very real element of

7    damage in this case.

8                Thank you very much, Your Honor.

9                THE COURT:  Thank you.  Anything further,

10   counsel?

11               MR. BADER:  Just briefly, Your Honor.

12               THE COURT:  Yes, please.

13               MR. BADER:  Thank you, Your Honor.  Just, I

14   think, essentially one.  Plaintiff has -- Plaintiffs'

15   counsel has repeatedly discussed this issue of the

16   note and the mortgage and not being able to --

17   Citimortgage not showing the Plaintiff that it holds

18   the note, and that if Citimortgage, or their

19   allegation that Citimortgage is waiving on an

20   assignment before it can proceed with the foreclosure

21   process.  It should be noted, and I -- and I do not

22   have the exact name of this case.  And I can send it

23   to Your Honor if you would like.  But the *Jackson*

24   (phonetic) case in Minnesota, I believe it's a Supreme

25   Court case --

1           THE COURT:  Well, if you're going to cite a

2      case to me, I think it's appropriate that I have the

3      appropriate cite and that opposing counsel have the

4      cite so we can look at it and see whether or not it

5      says what you say it says.

6           MR. BADER:  And I totally understand, Your

7      Honor.  I'd be more than happy to send that to you and

8      to opposing counsel.  And if I'm wrong, then I expect

9      your wrath, and it would be justified.  But that case

10     stands for the proposition that a note and a mortgage

11     travel separately.  There is no requirement that a

12     note be recorded.  And so --

13          THE COURT:  Well, let's back up.  Proper

14     procedure as an attorney in court, if you're going to

15     cite a case, you have to make sure that you have the

16     cite --

17          MR. BADER:  Okay.

18          THE COURT:  -- and that the Court has that

19     cite, and that opposing counsel has that cite.  That

20     has nothing to do with my wrath.  That's just the

21     normal course of the proper acting as an attorney.

22     And I don't -- I don't apologize for me stopping you

23     on that point because you're saying you don't even

24     know the name, and then you're going to say, this is

25     what the case holds, and then the opposing counsel

1    can't check that, and I can't check that.  Counsel,

2    no, you know better than that.

3              MR. BADER:  You're right, Your Honor.  I

4    only bring it up now -- I did not anticipate --

5              THE COURT:  But your comment to me about my

6    wrath --

7              MR. BADER:  I apologize for that.  And I

8    understand it's not your wrath.  I just meant that you

9    would be justified in being displeased with me if I

10   misrepresented something to the Court, which I do not

11   intend to do.

12             THE COURT:  I understand that.  But the

13   normal procedure is to ask the Court, Your Honor, I

14   believe there's another case that is on point here.

15   May I supply it to you and opposing counsel and have

16   further briefing on that issue, a one-page brief,

17   instead of quoting it here.  And opposing counsel,

18   having nothing before him, is at a loss, and the Court

19   is at a loss because I can't run back and pull up the

20   case and take a look at it.

21             MR. BADER:  I understand.

22             THE COURT:  You see how unfair that is?

23             MR. BADER:  I do understand, Your Honor, and

24   I apologize to you and to opposing counsel.  And if

25   this Court would allow it, I would ask that I be

```
1      allowed to submit this case with proper citation and a

2      short brief as to what it stands for to you and

3      opposing counsel.

4              THE COURT:  No.  Should have done that

5      beforehand.  That's why I think this is -- this motion

6      is way too early.  Anything further?

7              MR. BADER:  No.  I don't feel I could add

8      anything to that.

9              THE COURT:  All right.  I'll take this

10     matter under advisement.  And I think I've given a

11     clear indication of what I think of it.  I am going to

12     order you to see Magistrate Judge Brisbois this

13     morning.  He is available for a settlement conference.

14     And you're ordered to see him this morning to see if

15     this matter can be settled.  All right.  Anything

16     further?

17             MR. RUFER:  Nothing further, Your Honor.

18             MR. BADER:  No, Your Honor.

19             MS. WEGNER:  All rise.  Court is in recess.

20         (Concluded at 8:23 a.m.)

21                         *   *   *

22

23

24

25
```

1          I, SUSAN A. SELIGA, a Notary Public, do hereby certify

2     that the foregoing proceedings were taken by me in the

3     above-entitled action on September 23, 2011; that in

4     accordance with 28 U.S.C., Section 753(b), I certify that

5     the transcript herein is a true and correct record, to the

6     best of my ability, of the proceedings in the United States

7     District Court for the District of Minnesota before Chief

8     Judge Michael J. Davis on September 23, 2011.

9          I further certify that I am not a relative, employee,

10    attorney or counsel of any of the parties or attorneys or

11    financially interested in the event of this action.

12          IN WITNESS WHEREOF, I have hereunto set my hand and

13    affixed my seal of office this _____ day of October, 2011.

14

15

16                        _____

17                        Susan A. Seliga
                          Notary Public
18                        My State of Minnesota Commission
                              expires January 31, 2014
19

20

21

22

23

24

25