UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Richard Wentzel and
Debra D. Wentzel,

      Plaintiffs,

v.

CitiMortgage, Inc.
a corporation,

      Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 11-1236 (MJD/LIB)

_____

    Stephen F. Rufer, Pemberton, Sorlie, Rufer & Kershner, PLLP, Counsel for Plaintiffs.

    David A. Orenstein and Kendall L. Bader, Barnes & Thornburg, LLP, Counsel for Defendant.

_____

This matter is before the Court on Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**Factual Allegations**

Plaintiffs obtained a loan from Harmonic Mortgage Services Corp. in April 2006 in the amount of $220,000.00. The note on the loan called for monthly payments in the amount of $1,671.60. (Complaint ¶ 5.)

1

Plaintiffs allege that they executed a mortgage as security for the note with Plaintiffs' homestead, located at 309040 State Highway 210, Underwood, Minnesota.  (Id. ¶ 6.)  In May 2006, a third party, Gateway Financial Services, Inc. notified Plaintiffs that the loan was being transferred to Defendant CitiMortgage, Inc. ("CitiMortgage") effective July 1, 2006.  (Id. ¶ 8.)  Thereafter, Plaintiffs made their loan payments to CitiMortgage.  (Id. ¶ 9.)

In May 2008, Plaintiffs began to experience financial problems.  They called CitiMortgage to determine whether they could arrange a modified payment schedule.  (Id. ¶ 11.)  Plaintiffs were told that CitiMortgage could not help until Plaintiffs missed two months of payments.  (Id.)

When Plaintiffs failed to make the payment due in August 2008, CitiMortgage representatives contacted Plaintiffs and notified them they qualified for an adjusted payment of $832.58 per month.  Plaintiffs made the adjusted payments through February 2009.  (Id. ¶ 13.)  Plaintiffs allege they were told by a CitiMortgage representative that they would send them a worksheet, and that Plaintiffs would have to fill it out and return as soon as possible.  Plaintiffs did so.  (Id. ¶ 14.)

By April 2009, Plaintiffs had not heard from CitiMortgage, so they sent a fax to CitiMortgage, asking when they could expect to get a response on their application.  In May 2009, Plaintiffs still had not gotten a response on their application, so Plaintiffs called and spoke with a representative, who told them CitiMortgage was experiencing a huge backlog, and when they got to Plaintiffs' case, they would assign a loan counselor.  (Id. ¶ 16.)  A loan counselor was thereafter assigned in late May, 2009.

On June 11, 2009, Plaintiffs spoke with a representative named Diann, who told them they were not in danger of foreclosure.  (Id. ¶ 20.)   The following week, Plaintiffs spoke with someone named Kathy, who told them they must pay $1,332 in July and August to avoid foreclosure.  (Id. ¶ 21.)  In the next months, Plaintiffs allege they had many conversations with representatives of CitiMortgage, and they were repeatedly assured that their house was not in danger of foreclosure.  (Id. ¶¶ 24 and 25.)  Plaintiffs allege they were told in December 2009 that they were good prospects for the loan modification program, and should hear something in 30 to 60 days.  (Id. ¶ 26.)

In February 2010, Plaintiffs were told by Diann that they had qualified for a lower payment of $1,250.74, that their new interest rate would be 2%, which

3

would gradually increase to 5%.  Diann told Plaintiffs the paperwork for the loan modification would arrive by UPS.  Thereafter, Plaintiffs made the payments due in March through November 2010.  Plaintiffs did not, however, receive the paperwork.  (Id. ¶¶ 28-29.)  When Plaintiffs sent in the December 2010 payment, CitiMortgage refused to accept it.  (Id. ¶ 31.)   CitiMortgage's attorney allegedly told Plaintiffs they were waiting for an assignment from Harmonic Mortgage before proceeding further.  (Id. ¶ 32.)

On February 14, 2011, CitiMortgage wrote Plaintiffs, informing them that while Plaintiffs had been pre-approved for a GSE Home Affordable Modification in February 2010, the modification was closed on April 24, 2010 because of no response from Plaintiffs.  (Id. ¶ 33.)  Plaintiffs allege they timely responded to each and every request made by CitiMortgage.  (Id.)  The February 14, 2011 letter further provided that Plaintiffs had completed the workout package in October 2010, and that the modification was in the first stage of review.  (Id.)  However, on March 17, 2011, Plaintiffs received another refusal from CitiMortgage to accept their monthly payment, which included the statement "As you know, your loan is in foreclosure." (Id. ¶ 35.)

Plaintiffs brought this action, asserting five causes of action: 1) Breach of

4

Contract; 2) Promissory Estoppel; 3) Fraud and Misrepresentation; 4) Consumer Fraud, pursuant to Minn. Stat. § 325F.69; and 5) Unjust Enrichment.

**Standard for Motion to Dismiss/Failure to State a Claim**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move the Court to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted. In reviewing a motion to dismiss, the Court takes all facts alleged in the complaint to be true. Zutz v. Nelson, 601 F.3d 842, 848 (8th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Thus, although a complaint need not include detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Id. (citations omitted).

**Analysis**

    1.    **Breach of Contract**

Pursuant to Minnesota law, "[a] debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the

5

debtor." Minn. Stat. § 513.33, subd. 2. Further, an "agreement by a creditor to take certain actions, such as entering into a new credit agreement, forbearing from exercising remedies under prior credit agreements, or extending installments due under prior credit agreements" does not give rise to a claim, unless the agreement satisfies the requirements of subdivision 2. See also, Myrlie v. Countrywide Bank, 775 F. Supp. 2d 1100 (D. Minn. 2011) (finding that plaintiffs were barred from bringing action on an unwritten loan modification agreement); Grueling v. Wells Fargo Home Mortgage, 690 N.W.2d 757, 761-62 (Minn. Ct. App. 2005) (finding that claims on agreements falling under Minn. Stat. § 513.33 fail as a matter of law if the agreement is not in writing).

A debtor is one who obtains credit or who owes money to a creditor, and a creditor is defined as one who extends credit under a credit agreement. Minn. Stat. § 513.33, subd. (2) and (3). "Credit agreement" is defined as "an agreement to lend or forbear repayment of money, goods, or things in action, to otherwise extend credit, or to make any other financial accommodation." Minn. Stat. § 513.33, subd. 1(1). Based on the factual allegations in the Complaint, it is clear that the provisions of Minn. Stat. § 513.33 apply here.

Plaintiffs' breach of contract claim is based on the alleged agreement to

modify the loan, but the record is clear that no writing exists of such an agreement. Rather, Plaintiffs were told over the phone by an employee of CitiMortgage that they had qualified for a loan modification.

In their opposition brief, Plaintiffs do not challenge the argument that Minn. Stat. § 513.33 bars the breach of contract claim. Based on the above, the Court will dismiss the breach of contract claim as barred by Minn. Stat. § 513.33.

### 2. Promissory Estoppel

The courts in both Myrlie and Grueling found that promissory estoppel claims based on agreements falling under Minn. Stat. § 513.33 fail as a matter of law if the agreement is not in writing. In Grueling, the Minnesota Court of Appeals held that where a promissory estoppel claim is based upon an oral promise to enter into a new credit agreement, "[t]he plain and unambiguous language of the statue clearly prohibits a claim that a new credit agreement is created unless the agreement is in writing, expresses consideration, sets forth all relevant terms and conditions, and is signed by the creditor and debtor." 690 N.W.2d at 762. Finding that the requirements of Minn. Stat. § 513.33 were not met, the court held that the district court correctly dismissed the promissory estoppel claim to establish a new credit agreement. Id.

In <u>Myrlie</u>, the district court adopted the Magistrate's recommendation that a similar promissory estoppel claim be dismissed. The Magistrate found that "enforcing the alleged promise in this action would run contrary to Minn. Stat. § 513.33, which was enacted to 'protect lenders from having to litigate claims of oral promises.'" <u>Myrlie</u>, 775 F. Supp.2d at 1107 (quoting <u>Rural Am. Bank of Greenwald v. Herickhoff</u>, 485 N.W.2d 702, 705 (Minn. 1992)). Because the claim was based on an oral agreement to modify an existing loan agreement, Magistrate determined that the claim was barred by Minn. Stat. § 513.33. <u>Id.</u> at 1108-09.

Plaintiffs argue this case is distinguishable from <u>Myrlie</u> and <u>Grueling</u> because here, they have alleged details of the loan modification agreement, such as the monthly payment, and the lower interest rate, and they have alleged inducement to Plaintiffs' detriment, and that they have alleged that justice requires enforcement of the agreement. While Plaintiffs may have plead a more detailed promissory estoppel claim than asserted in either <u>Myrlie</u> or <u>Grueling</u>, the fact remains the claims were dismissed because they were based on an oral agreement to modify a credit agreement. Accordingly, the promissory estoppel claim fails as a matter of law. <u>See</u> <u>also</u> <u>Carter v. Wells Fargo Bank N.A.</u>, Civ. No.

10-210 (DWF/LIB), 2011 WL 2601797 at *3-4 (D. Minn. June 13, 2011) (finding that a promise to lend money is not enforceable if such promise is not in writing).

### 3. Fraud/ Misrepresentation

CitiMortgage asserts that for the reasons stated above, Plaintiffs' fraud/misrepresentation claim fails as it is based on the alleged loan modification agreement.  In their response, Plaintiffs do not challenge the argument that Minn. Stat. § 513.33 bars a common law claim of fraud/ misrepresentation that is based on a credit agreement.  Accordingly, this claim will also be dismissed.

### 4. Consumer Fraud

CitiMortgage argues Plaintiffs' claim under the Minnesota Consumer Fraud Act ("MCFA") is also barred by Minn. Stat. § 513.33.  Plaintiffs respond that their MCFA claim is not an action on a credit agreement that would be barred by Minn. Stat. § 513.33.  Rather, Plaintiffs claim that CitiMortgage engaged in fraud by promising to send a written loan modification agreement, knowing that no such written agreement would be sent, in order to ensure that Plaintiffs continued to send in mortgage payments.

The MCFA prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or

9

deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable . . ."   Minn. Stat. § 325F.69, subd. 1.

Claims asserted under the MCFA are to be construed broadly, to encourage the aggressive prosecution of statutory violations.  Kinetic Co. v. Medtronic, 672 F. Supp. 2d 933, 945 (D. Minn. 2009).  The statute applies, however, only to those that can "demonstrate their cause of action benefits the public."  Id. (quoting Ly v. Nystrom, 615 N.W.2d 302, 314 (Minn. 2000)).

Plaintiffs argue that their claim falls under the protection of the MCFA; Plaintiffs are consumers and CitiMortgage is a sophisticated business engaged in fraudulent business practices.  CitiMortgage argues that dismissal of the MCFA claim is appropriate, as Plaintiffs cannot meet the public benefit standard under the MCFA.

The Minnesota Supreme Court has clearly held that an MCFA claim based on a fraudulent representation made only to one party does not confer a public benefit as required under the Private Attorney General statute.  Ly, 615 N.W.2d at 314.  Here, Plaintiffs' MCFA claim is based solely on communications between the parties - Plaintiffs do not allege that CitiMortgage made any

misrepresentations to the public.  See Curtis v. Altria Group, Inc., 792 N.W.2d 836, 849 (Minn. Ct. App. 2010) (finding that claims of fraudulent representations made to the public at large would confer a public benefit).  Accordingly, the Court finds that Plaintiffs have failed to assert a claim under the MCFA.

### 5.   Unjust Enrichment

Plaintiffs allege that CitiMortgage has not demonstrated that is the assignee of their mortgage and note and that Plaintiffs have made substantial payment to CitiMortgage.  Plaintiffs thus assert that CitiMortgage has been unjustly enriched by such payments.  CitiMortgage argues that Plaintiffs' unjust enrichment claim must be dismissed as Plaintiffs have not alleged that CitiMortgage obtained any payments on the note through illegal or unlawful means, or as a result of fraudulent inducement or unconscionable conduct.

The Minnesota Supreme Court has held that "unjust enrichment claims do not lie simply because one party benefits from the efforts or obligations of others, but instead it must be shown that a party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully."  First Nat'l Bank of St. Paul v. Ramier, 311 N.W.2d 502, 504 (Minn. 1981).  Other Minnesota court decisions, however, have construed unjust enrichment claims to include

circumstances whether the defendant's conduct in retaining the benefit is morally wrong.  Cady v. Bush, 283 Minn. 105, 166 N.W.2d 358, 361-62 (1969); Navickas v. Quilling, No. A10-145, 2010 WL 5290552 at *7 (Minn. Ct. App. December 28, 2010) (citing Schumacher v. Schumacher, 627 N.W.2d 725 (Minn. Ct. App. 2001)); Hartford Fire Ins. Co. v. Clark, 727 F. Supp.2d 765, 777 (D. Minn. 2010) (citing Brand v. Williams, 29 Minn. 238, 13 N.W. 42 (1882)) (noting that a nearly a century before the Ramier decision, the Minnesota Supreme Court held that unjust enrichment claims can be maintained where "equity and good conscience" require that one return money of another).

The Court thus finds that Plaintiffs have properly asserted a claim for unjust enrichment, and at this stage of the proceedings, dismissal is not warranted.

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [Doc. No. 2] is GRANTED as to Counts One through Four and DENIED as to Count Five.

Date:   March 22, 2012

                                      s/ Michael J. Davis
                                      Michael J. Davis
                                      Chief Judge, United States District Court